HELEN L. GAULT, Appellee, v. W. W. SICKLES, Appellant.

**Estates of Decedents:** PERSONAL LIABILITY OF ADMINISTRATOR: AGENCY: EVIDENCE. Where an action was brought by a woman against an administrator personally for the collection of a claim allowed against an estate, and charging the loss of property to the estate through the negligence and fraud of said administrator, *held*, that

evidence that the plaintiff's husband attended to her business, and that the defendant talked with the husband about the sale of the property in question under foreclosure of a mortgage, and that he warned him that a certain sum must be raised to save the property from such sale, and that afterwards the husband told him he could not raise the money, and that he did not think there was enough in it to bother with it, was improperly excluded.

*Appeal from the Audubon District Court.*—HON. GEORGE CARSON, Judge.

WEDNESDAY, MAY 18, 1892.

THE defendant was administrator of the estate of Elizabeth C. Seavey, deceased. The plaintiff held a claim against the estate amounting to four hundred dollars. It appears that there is now no property or money of said estate which can be appropriated to the payment of the claim of the plaintiff. This action was brought to recover the plaintiff's claim of the defendant upon the ground that he was negligent in not applying to sell certain real estate to pay the debts against the estate, and that he fraudulently permitted a mortgage on said real estate to be foreclosed, and took a deed to himself for said land, and appropriated the same to his own use. The defendant denied all liability on any account. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Nash, Phelps & Green,* for appellant.

*Andrews & Hanna,* for appellee.

ROTHROCK, J.—I. A question was made whether the claim of the plaintiff was allowed as a valid claim against the estate. It appears that it was allowed by the defendant as administrator, but there was a question whether the allowance was approved by the court. The plaintiff made an application for a *nunc pro tunc*

order of allowance, and the order was made. The defendant appealed from this order, and it was affirmed. See 48 N. W. Rep. 924. This disposes of all question as to the validity of the claim. It must be regarded as valid and collectible, if any one is liable for its payment.

II. The defendant was appointed administrator of the estate of Elizabeth C. Seavey in August, 1886. The property belonging to the estate consisted of a tract of land which was incumbered by a mortgage to secure the payment of sixteen hundred dollars and interest, and a second mortgage for some three hundred and fifty dollars and interest. The land was improved, and consisted of a farm of one hundred and sixty acres. The defendant took charge of the farm, and collected the rents, and paid the same out for taxes, interest, etc. Elizabeth C. Seavey left a family surviving her, consisting of W. H. Seavey, her husband, and two daughters, one of whom is the plaintiff, and the other is the wife of the defendant. These daughters were children by a former husband. She also left surviving her two sons, of whom Seavey was the father. Each of the two daughters had a claim of about four hundred dollars against the estate. The claims were valid, and never have been disputed. The ultimate question to be determined in this case is whether the defendant should pay the claim of the plaintiff because of the manner in which he managed the estate while he was acting as administrator, or, rather, was the evidence sufficient to warrant a verdict finding the defendant liable for the amount of the plaintiff's claim? The second mortgage on the land was held by B. S. Phelps. It was foreclosed, and the land was sold on special execution for the amount of the judgment and costs. Phelps was the purchaser at the sheriff's sale. A few days after the sale the defendant paid Phelps the full amount due to him, and took

an assignment of the certificate of sale.    At the expiration of the period of redemption the defendant took a sheriff's deed, and afterwards sold the land to other parties.  By this proceeding the distributive share of the husband of the deceased was extinguished, and the purchasers of the land from the defendant took a good title, clear of incumbrances, excepting the first mortgage of sixteen hundred dollars.  The contention in behalf of the plaintiff was that the defendant violated his duty as administrator, and by fraudulent collusion with Phelps procured a foreclosure of the mortgage with intent to cheat the plaintiff out of her claim.  The evidence that the defendant acted fraudulently consists of the fact that he had a conference with Phelps before the foreclosure suit was commenced; that he carried the original notice in that case to the plaintiff, and procured her signature to an acknowledgment of service; that he bought the certificate of sale a few days after the sheriff's sale was made, and that he afterwards sold the land for more than enough to pay all that was due to him; and that he should pay the plaintiff's claim.  The evidence introduced in behalf of the defendant is a fair explanation of all these alleged irregularities.  But we are not prepared to say that the jury was not authorized, by a fair consideration of the evidence which the court permitted to be introduced, to find for the plaintiff.

But we think that the court seriously erred in the matter of rulings upon the admission of evidence.  It appears that the plaintiff is married, and the evidence shows that her husband, G. Gault, manifested quite an interest in the matter.  When the defendant was examined as a witness, he detailed a conversation with the plaintiff's husband in reference to the claim, and the necessity of raising some money for the purpose of saving any balance there might be in the land after the heirs were paid.  In the course of his examination as a

witness, he (the defendant) was asked, "Who, if any one, was attending to her business for her when she did not attend to it herself." The answer was, "He was;" meaning that her husband was. The plaintiff objected to the evidence, because it was the conclusion of the witness. The objection was sustained. We think the objection should have been overruled. It was a general question and a general answer as to a fact. If the plaintiff's counsel desired to pursue the subject or question the general statement, he should have done so by cross-examination.

In the further examination of the defendant as a witness, he testified as follows: "I talked with Mr. Gault afterwards about the matter in town. I think he was close to his wife. We were talking then about the advance, and fixing matters up; and finally, just a day or two before the sale, I went up to their house, and they were both at home, and we talked the matter over. I had talked with Mr. Gault in the first place, and told him he would have to do something, and he said he could raise about two hundred dollars. I said it would be enough, and 'it has got to be done by a certain time, or it is all gone,' and we went in and talked with Mrs. Gault. I told her this money had to be raised before this land was sold, or we would lose it all, and we were talking about raising the money. I told them if they could not advance any money and help, that I would have to do something to protect myself, and save what money I had invested in it; that I would make the effort, and if I bought up the certificate from Mr. Phelps and made any money on it, I would consider it my own. They both raised no objections to that, either of them. Mr. Gault had said he would let me know in a day or two. He went to talk with his father in regard to the matter, and in a day or two came into the office and told me he guessed he could not do it. He did not think there was enough in it to bother with

it, and he did not want to lose any more in it. I told him 'All right,' I would have to do the best I could for myself. Afterwards the land went to sale. B. S. Phelps bought it, and in a few days afterwards I bought the certificate from him, paying five hundred and five to five hundred and eight dollars for it—what the cost and foreclosure called for. I had no intentions of cheating any one out of anything that belonged to them in any of these transactions, or of cheating Mrs. Gault out of her claim." The plaintiff moved to strike out all of this testimony which relates to conversations had with the husband when the plaintiff was not present. The motion was sustained. It is very clear to us that it should have been overruled. The evidence was direct and positive, and it was upon the most material question in the case. The evidence which had been given and the answer as to his general authority, which we hold was wrongfully stricken out, shows quite satisfactorily that the husband was the authorized agent of the plaintiff in endeavoring to devise ways and means to unite with the defendant in saving any balance that could be saved to pay the claims of both the plaintiff and the defendant.

There are a large number of errors assigned which we do not regard as necessary to consider. The charge of the court to the jury appears to us to be fair to the appellant, and the claim of the defendant that there was no evidence of what the value of two-thirds of the farm would have been if offered at administrator's sale is without merit. If the defendant desired to go into that question he should have done so on the cross-examination of the plaintiff's witnesses as to the value, and by examining his own witnesses on the question. There is no need to further extend this opinion. It is a plain question of fact, to be determined by proper evidence, whether the defendant acted in bad faith in what he did, and whether he profited thereby to the

damage of the plaintiff.  If he did, he is liable; if he did not take advantage of the plaintiff, and she had the same opportunity to take an assignment of the certificate of the sale that he did, or an opportunity to unite with him in taking an assignment of it, she has no cause of complaint.

For the errors above pointed out the judgment of the district court is REVERSED.