LIZZIE CRAIG, Appellee, v. Estate of EDWARD CRAIG, Deceased; FRANK O. CRAIG and MAUD STONE, Appellants.

**Appeal:** ARGUMENT: MOTION TO STRIKE.  An argument on appeal will not ordinarily be stricken because filed out of order, provided it is filed in time.

1

**Estates of decedents:** CLAIMS:  NOTICE:  DELAY:  RELIEF.  Where an administratrix having a claim against the estate employed counsel to look after it and he prepared the claim which was verified, but by oversight neglected to file the same for nearly a year, when the same was filed but no notice served on the special administrator within the statutory time, and upon discovery of the oversight the administratrix employed other counsel and the heirs appeared and contested the claim, the equitable circumstances were sufficient to justify the delay in giving the notice and to authorize a hearing upon the merits of the claim.

2

Same: CLAIMS: NOTICE: LIMITATIONS. An objection to the allowance of a claim against an estate, on the ground that it was barred and no statutory notice of the same was given, must be affirmatively shown by the party making the objection; and proof simply that notice of a claim was given by publication without showing an order for publication was not sufficient to set the statute of limitations in motion.

Same: CLAIMS: PLEADING: PROOF: VARIANCE. The fact that one having a claim against an estate was variously described as Lizzie, Elizabeth and Mrs. Craig, or that a middle name was sometimes used and sometimes omitted, did not create a variance between the pleadings and proof, especially where the witness used the names synonymously.

Same. It is not necessary that a claim against an estate shall be stated with the same fullness and particularity as a petition in an ordinary case; nor is the same conformity of proof to the allegations of the claim required as in ordinary actions.

Same: CLAIMS: EVIDENCE: SUFFICIENCY OF PROOF. Proof of money had and received by decedent for the use and benefit of claimant will support a claim against the estate for money loaned; and when thus established it is not incumbent upon claimant· to prove nonpayment, and the burden of showing payment rests upon the parties resisting the claim. Evidence held sufficient to establish the claim of the wife against her husband's estate for money belonging to her and collected by him.

Same. One asserting a claim against an estate need not prove that the indebtedness arose on the exact date alleged, but may rely on a different time.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

SATURDAY, NOVEMBER 21, 1914.

PROCEEDINGS to establish a claim against the estate of Edward Craig, deceased. On the theory that the claim was not filed in time, claimant pleaded equitable circumstances excusing the delay, and upon trial to the court these circumstances were held sufficient. A jury was then called to pass

upon the claim, and at the conclusion of the testimony the trial court directed a verdict for the claimant, and the objecting heirs appeal.—*Affirmed.*

*Milton Remley,* for appellants.

*John J. Ney,* for appellee.

DEEMER, J.—There is much dispute between counsel over the record, which, according to the certified transcript, is plain and could easily have been abstracted. But the record is such that we have been compelled to resort to these transcripts for the facts. Appellee's counsel say in argument there are no transcripts; but we find two which bear the proper filing marks and have come to us with the other papers, and we must assume they are properly before us. Many motions are also filed in the case; among them a motion to dismiss the appeal because of insufficiency of the notice.

It is manifestly sufficient to present some of the matters complained of, and the appeal should not be dismissed.

Another is a motion to strike appellants' argument because filed out of time. It is claimed that appellee had the burden and that he was entitled to open and close the argument. We do not, as a rule, strike an argument because not filed in regular order, provided it be filed in time. The case has been thoroughly argued on both sides, and no prejudice has resulted to appellee, even if it be conceded that he was entitled to open and close. This motion to strike will also be overruled.

1. APPEAL: argument: motion to strike.

The case is complicated by various claimed errors made by the trial court prejudicial to appellee; but appellee has not appealed. Again the point is made that the trial court neglected to rule upon certain motions, etc., made by appellee; but appellee did not appeal from these matters.

As we understand the case, it is as follows: Edward Craig died intestate, the latter part of November of the year 1910,

leaving Lizzie or Elizabeth Craig his widow, and Frank O.
Craig and Maud Stone, his children and only heirs surviving.
The widow was appointed administratrix, and gave notice of
her appointment December 3, 1910.   On the 25th day of Feb-
ruary, 1911, she made out, subscribed, and verified a claim in
the name of Lizzie Summerhays Craig against the estate, which
claim, omitting the verification, is as follows:

Lizzie Summerhays Craig v. Lizzie Craig, Administratrix of
the Estate of Edward Craig, Deceased.
Claim.
The said Lizzie Summerhays Craig claims of the said
Lizzie Craig as administratrix of said estate the sum of eleven
hundred and eighty dollars, as per the following statement:
Mch. 2, 1908.   To money loaned decedent.·.........$1,000.00
Int. on same at 6 per cent. for 3 years
to Mch. 1, 1911....................   180.00
                                    ──────────
                                    $1,180.00

By reason of circumstances presently to be related, this
claim was not filed until November 3, 1911.   On April 5th the
court appointed one Cash as ''special administrator to investi-
gate and report upon the claim.''   On December 5, 1912, this
administrator made and filed his report allowing the claim to
the amount of $1,223.75.   On December 17th, of the same year,
Frank Craig and Maud Stone filed the following resistance to
the claim:

Comes now Maud Stone and Frank O. Craig, sole heirs
of Ed. Craig, deceased, and deny that the said claim is just
and right against the said estate; deny that she loaned any
money to the said Ed. Craig, deceased, as stated in said claim.
They further deny that said estate owes to the said claimant
any sum whatsoever.
They, therefore, ask that she be required to prove her
claim as any other claim against the said estate.

And on the same day they filed objections to the report of
the special administrator.   On the next day the claimant filed

a motion to strike the above objections from the files, upon the following grounds:

(1) The said alleged heirs are not parties to this case or suit.

(2) The said alleged heirs are not the representatives of the deceased.

(3) The said alleged heirs have no legal title or power to defend, call a jury, or otherwise conduct a litigation.

(4) The claim is allowed by the special administrator and he is the sole representative of the deceased, in this matter; and his report stands as conclusive until impeached.

No rulings seem to have been made on any of these motions, and so the case rested until the regular February term of court, when the matter came on for hearing, the claimant in the meantime and on February 5, 1913, having filed an amendment to her claim, pleading equitable circumstances excusing her failure to file the claim within six months, and for not pressing it to a hearing, giving notice, or proving the same. The heir demurred to this amendment on the ground that the circumstances pleaded did not excuse the delay. This demurrer was overruled, and the heirs excepted.

On the 19th day of April, 1913, the matter came on for hearing before the court on the amendment to the claim setting forth the equitable circumstances, and, after hearing all the testimony, the court found that these equitable circumstances were sufficient to excuse any delay on the part of the claimant, in filing, giving notice of, and proving up her claim. The case was then assigned for trial, and, when reached for that purpose, on the demand of the heirs a jury was called and testimony heard upon the claim itself, and at the conclusion thereof the trial court directed a verdict for the claimant, and the claim with interest at 6 per cent. from March 2, 1908, was established and allowed against the estate.

The appeal of the heirs is from the judgment and order establishing the claim, "and from all orders made in the matter of such claim." As already stated, the claimant did

not appeal, although her counsel have argued the case as if she did. Perhaps this is legitimate if it should appear from the whole record that no other order could be made except to allow the claim.

In the view we take of the case it is not necessary to decide this proposition, and we shall direct our attention to the two main questions presented by the appeal. It might also be suggested in this connection that Lizzie Craig objected to the trial by a jury, and upon this motion the trial court made the following order:

It appearing to the court the report of the special administrator has not been approved by the court and that the heirs of Edward Craig, deceased, are objecting to the allowance of the claim of Lizzie Craig, the court holds that the jury will be impanelled and the matter tried and determined and the objections will be overruled and exceptions noted. Exception saved.

It will be observed that the proceedings were about as complicated as they could well be; but, as we understand it, the only questions now arising relate to whether or not claimant sufficiently excused her delay in filing, proving, giving notice, etc., of her claim against the estate, and as to whether or not under the record a verdict should have been directed in her favor.

It appears that the law firm of Ranck & Bradley (Bradley doing the work) represented the estate or the administratrix; and that the administratrix spoke to him (Bradley) about her claim; and that he, not knowing of any contest, undertook to handle the matter for her. He made a preliminary investigation and advised her to file a claim. He then drew up the claim, which we have heretofore set out, and it was verified by claimant as stated. He expected to file it immediately, and fully supposed he had done so, and several times reported to claimant that it had been filed. He did not discover anything to the contrary until after the dissolution of his firm some time in June, 1911;

2. ESTATES OF DECEDENTS: claims: notice: delay: relief.

when, in looking over various papers relating to other matters, he discovered that the claim had not been filed. Claimant fully supposed it had been filed and knew nothing to the contrary until about the time it was filed. When this discovery was made, the attorney then immediately filed the claim, and, having learned shortly afterward that there was to be a contest, he advised claimant to employ another attorney.

Before the matter was turned over to another attorney, Bradley had the claim docketed, and the "special administrator" was appointed as heretofore stated. But no notice was given of the filing of the claim for two reasons: First, because the regular administratrix was also claimant; and, second, because about the time of the change of counsel the heirs appeared and objected to the claim, and to the report of the special administrator.

Section 3349 of the Code provides:

All claims of the fourth of the above classes, not filed and allowed, or, if filed and notice thereof, as hereinbefore provided, is not served within twelve months from the giving of the notice aforesaid, will be barred, except as to actions against decedent pending in the district or Supreme Court at the time of his death, or unless peculiar circumstances entitle the claimant to equitable relief.

It will be observed that this claim was filed within twelve months, but no notice was ever given of its filing.

Sections 3338 and 3340, before their recent amendment by the 35th G. A., chapter 277, read as follows:

Sec. 3338. Claims against the estate shall be clearly stated, and, if founded upon a written instrument, the same or a copy thereof and of all indorsements thereon shall be attached as a part of the statement, and if upon account, an itemized copy shall be attached, showing the balance; which statement must be sworn to and filed with the clerk of the district court, and ten days' notice of the hearing thereof—which shall be at some regular term of the court—accompanied by a copy of the claim, shall be served on one of the executors

·or administrators in the manner required for commencing ordinary actions, unless the same has been approved by the executor or administrator, in which case it may be allowed by the clerk, without notice, and so entered upon the probate calendar.

Sec. 3340.   All claims filed, and not expressly admitted in writing signed by the executor or administrator, with the approbation of the court, shall be considered as denied, without any pleading on behalf of the estate, but special defenses must be pleaded.   .   .   .

Section 3346 reads as follows:

If either of the executors or administrators is interested in favor of a claim against the estate, he shall not serve in any manner connected therewith, and if all are thus interested, the court shall appoint some competent person a temporary executor or administrator in relation to such claims.

Without deciding that notice is required where the administrator himself holds the claim, and a temporary administrator is appointed, who acts without notice and approves the claim, it is sufficient to say, for the purposes of this case, that as the estate has not been fully settled, and the administratrix still has money and property in her hands, belonging to the estate, we think the trial court did not err in holding the equitable circumstances sufficient to justify any delay in the giving of the notice, if one was required; and sufficient to justify a hearing upon the merits of the claim. *Manatt v. Reynolds,·* 114 Iowa, 688; *Wilcox v. Jackson,* 57 Iowa, 278; *McDermott v. McDermott,* 138 Iowa, 351; *Brewster v. Kendrick,* 17 Iowa, 479; *McCormack v. Cook,* 11 Iowa, 267; *Johnston v. Johnston,* 36 Iowa, 608; *Lamm, v. Sooy,* 79 Iowa, 593; *Sankey v. Cook,* 82 Iowa, 125; *Wickham v. Hull,* 102 Iowa, 469; *Henry v. Day,* 114 Iowa, 454; *Pettus v. Farrell,* 59 Iowa, 296.   Of course, ''negligence can never form a passport to the relief contemplated by the statute,'' but misplacement of papers and forgetfulness of an attorney or agent have been held not to constitute negligence. *Manatt v. Reynolds, supra.*   See, also,

*Barto v. Electric Co.,* 119 Iowa, 179; *Klepfer v. Keokuk,* 126 Iowa, 592.

Under a previous decision of this court, appellants must fail in any event on this proposition, for their contention that the claim was not filed in time and no proper notice given is an affirmative defense, to be proved by them, and it nowhere appears in this record that the court or the clerk ordered notice of the administratrix's appointment to be given by publication. Without this order, service by publication, even if made, was of no validity and until proper notice of appointment is given the statute as to the time of filing of claims does not begin to run. From the fact of publication no implication arises that an order was made. *McConaughy v. Wilsey,* 115 Iowa, 589.

3. SAME: claims: notice: limitations.

II. As to the merits of the claim:

Suggestion is made that there was a fatal variance between the pleadings and the proofs with reference to the identity of the claimant. Her name appears in the record as "Lizzie Craig," "Lizzie Summerhays Craig," "Elizabeth Craig," "Elizabeth Summerhays Craig," "Mrs. Craig," and perhaps "Mrs. Edward Craig" or "Mrs. Ed. Craig." It is well known that "Lizzie" is the equivalent of "Elizabeth" (*Wilson v. Turner,* 81 Ill. 402); and that the middle name or initial may be and frequently is disregarded (*State v. Williams,* 20 Iowa, 98; *Hendershott v. Thompson,* Morris, 186; *State v. Loser,* 132 Iowa, 419). The designation of "Mrs. Craig" is the equivalent of "Mrs. Ed. Craig" or "Mrs. Edward Craig," especially where a witness uses the terms synonymously. *Thomas v. Desney,* 57 Iowa, 58. There is no variance. The proofs show without question that claimant was a Summerhays, before her marriage; that she was the wife of Edward Craig, and went by the name of Mrs. Ed. or Mrs. Edward Craig, and was so designated after as well as before his death.

4. SAME: claims: pleading: proof: variance.

Again, it is said that the claim is for money loaned upon an express promise and agreement to return the same, and

that it cannot be established by proof of an implied promise.

Like all claims, this was couched in the most
5. SAME. general terms, and was sufficient under the
statute. Code, section 3338, *supra.* It is not necessary that
the claim be stated with the same fullness and particularity
as a petition in an ordinary case. *Harrison v. Harrison,* 124
Iowa, 528. The same conformity of proof to the allegations
of the claim is not required as in an ordinary action. See
*Harrison's* case, *supra.*

Now the claim as filed does not plead an express promise,
and it manifestly was not founded on a written instrument,
for none was attached. Proof of money had and received by
deceased for claimant's use and benefit will
6. SAME: claims: support the claim as filed. And if the claim
evidence: suf-
ficiency of
proof. be established in this manner, it was not in-
cumbent on claimant to prove nonpayment. One of our stat-
utes throws this burden upon the parties resisting the claim.

Going now to the record, we find that one Brown applied
to Ed. Craig, the husband of claimant, for a loan of $6,000.
This was promised, but as Craig was then building a house
which cost more than he expected, or for other reasons, he
became short of money and told Brown that he could not fur-
nish more than $5,000, but that his wife, the claimant, had a
thousand dollars which he (Brown) could get. Brown said
in effect that he did not care who the money came from, and
so it was arranged that Brown should get the $6,000, giving a
mortgage upon real estate to secure $5,000 and executing a
note to Elizabeth Craig for $1,000 which was unsecured; but
the note was signed by both Brown and his wife. These notes
were executed on or about March 2, 1908, and Brown received
two checks for the amount of the notes. As we understand it,
Mrs. Craig was present when this transaction was completed,
but it does not appear that the $1,000 note was ever delivered
to her, although she was the payee named therein. Thereafter,
and on or about March 1, 1909, Brown made a check to Mrs.
Ed. Craig for $60, in payment of the interest for one year.

This check was delivered to Ed. Craig, at the home of Craig and in Mrs. Craig's presence. Ed. Craig indorsed the same in his own handwriting, in the name of his wife, and there is no direct testimony that the wife ever got the money. The bank paid the check to Craig on his indorsement in his wife's name because the wife was sick, and it was willing to chance the indorsement. On March 1, 1910, Brown gave Ed. Craig a check for $1,050 payable on its face to Elizabeth Craig, and received back the $1,000 note which Craig then produced. Craig indorsed the check in the name of his wife, and also indorsed his own name upon it, and the bank paid the amount thereof to Craig under the following circumstances testified to by the bank cashier:

Q. Now what conversation, if any, did you have with Edward Craig about his indorsing his wife's name? A. I objected to paying the check on his indorsement, and he said his wife wasn't able to come up and attend to the matter, and he said something about being all in the family, remarked something of that kind, and she wanted him to attend to the business for her. Therefore I paid the check.

Q. How did you pay it? Did you deal out the cash or give credit, or what? A. Gave credit.

Q. To whom did you give credit? A. I gave Edward Craig's account with the interest $50, and I gave Edward Craig a certificate of deposit bearing interest for six months for $1,000 and delivered the same to him.

Claimant was not permitted to testify that she never received this money from her husband, and, under the statute hitherto referred to, she was not required to prove nonpayment. There was testimony, however, to the effect that claimant did not attend to her own business, the effect of it being that her husband attended to it for her.

This is the substance of the testimony for the claimant, and the only evidence introduced for the heirs was an attempt to show that claimant did not have the $1,000 to loan at the time she claims to have furnished the money. But this testimony was very vague, and did not, as we view it, justify a

submission of that issue to the jury. Indeed, she might have a claim against her husband's estate for the amount of money collected and retained by him without showing that she had that amount of funds when the loan was made. It is doubtless true that this testimony was not sufficient to show a loan directly to her husband at the time the note was made to her by the Browns, but it does show that she was the party to whom Brown agreed to pay the money; that he (Brown) carried out the agreement and made the payments to her by giving her checks in her own name; and that her husband collected them and personally received at least the $1,050 in March of the year 1910. And it also appears that deceased got the money on the $60 check made payable to his wife.

The testimony would not justify a finding that the wife made the loan originally to her husband. The loan was made to Brown, and he and his wife signed a note for the $1,000 made payable to Elizabeth Craig. All the checks for interest and principal on the note were made payable to Elizabeth Craig, and her husband, either with or without authority from her, either express or implied, indorsed the same in her name, and one of the checks he also indorsed himself. He received the full amount of the checks, and, so far as shown, never accounted to claimant for the amount thereof. No matter whether he indorsed with or without authority, he presumptively held the money for his wife's benefit, and, if the act of indorsement was tortiously done, the wife could elect to waive the tort and sue him on an implied promise to return the money. Having the right to waive the tort, she could treat the matter as she did, as a loan to him arising by implication from the facts before recited.

Under our system of pleading, especially as it relates to claims against estates, it was proper for claimant to treat this receipt of the money by the husband as a loan to him. But there was no loan, of course, under this theory, until he received the money; and interest should be computed upon the

amounts received from the time of their receipt down to the time the verdict was directed.

Appellants contend that in any event the case should have gone to the jury to determine whether or not claimant ever made the loan, and they also insist, with much emphasis, that claimant did not make out a case showing money loaned in March of the year 1908. The latter contention is sound. But in our opinion the testimony adduced by claimant, upon all the issues presented, made out a prima facie case requiring a verdict in her favor in the absence of any testimony for the heirs as to payment, or that the money which the husband received did not belong to the plaintiff. All the papers in the transaction show that the money was treated as belonging to the plaintiff, and was so received by the deceased. The testimony adduced to show that he, and not she, had the money which was loaned, does not, in our opinion, meet the prima facie case made for claimant.

Claimant was not required to prove that the money was loaned to or received by her husband on the date stated in the claim. Time was not material, and claimant was not required to prove it as alleged. She may rely upon proof as to some other time or times. Code, section 3613.

7. SAME.

The trial court figured the loan as made March 2, 1908, as alleged, and allowed interest on the $1,000 at 6 per cent. down to the time the verdict was directed, amounting in all to $1,310. As we view it, the case should be treated as if deceased received the $60 and the $1,050 as of the dates the money was received by him, and interest figured on these amounts from the time of their receipt down to the day the verdict was returned. There is but little difference in these figures, and that difference is in favor of the appellants or the heirs, and claimant has no cause for complaint.

The result is that the orders must be, and they are, each and all—*Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.