NETTIE B. LUSBY, Administratrix, et al., Appellees, v. LEVI WING, Appellant.

No. 39552.

1288

APRIL 2, 1929.

*Genung & Genung,* for appellant.

*Hickman & Hoyne* and *Tinley, Mitchell, Ross & Mitchell,* for appellees.

EVANS, J.—I. Catherine Wing died intestate May 28, 1926, survived by one daughter and two sons, as her only heirs. These are Mrs. Nettie Lusby, John Wing, and Levi Wing. The notes sued on are known in the record as Exhibits 1, 2, and 3, and are for $1,500, $1,206.09, and $14,000, respectively. Exhibit 1 bore date February 23, 1922, and Exhibits 2 and 3 bore the date April 25, 1923. Though the defendant pleaded an affirmative defense to Exhibit 1, he offered no testimony thereunder, and he does

not contend here for a reversal as to such note. As to Exhibits 2 and 3, he pleaded a specific denial of delivery. The issue thus made was the only one to which the evidence was directed. The plaintiff introduced the evidence of three witnesses, who testified to the discovery of the notes sued on in the tin box of the intestate, where she kept her valuable papers under lock and key. The respective signatures of the defendant to the two instruments were admitted. This was quite sufficient to make a prima-facie case for the plaintiff upon the notes.

As against this, the defendant purports to rely upon circumstantial evidence in support of his contention that the notes  were never delivered. These circumstances were testified to by the defendant himself, over appropriate objections as to his competency. The testimony of defendant at this point was, in substance:

"I signed the notes. I put them in my pocket. I took them out of my pocket and put them in the bureau drawer. I never saw them again. I did not authorize anyone to deliver them. I did not deliver them."

At the time of the execution of such notes, the defendant was a widower, and was staying at the home of his mother, Catherine. The "bureau" was in this home. The last statement of the witness, affirming non-delivery, must be regarded as a clear invasion of Section 11257, Code of 1924. Whether the same section was invaded by any other portion of his testimony, we shall not devote labor to the inquiry, but shall take account of the circumstances thus related, and shall give consideration to their weight or value as circumstantial evidence.

The estate of Mrs. Wing consisted in value of about $50,000, exclusive of the notes in suit. At the time these two notes were executed, the defendant was indisputably owing his mother the sum of $14,000, evidenced by a promissory note, dated January 4, 1922, and secured by a second mortgage on a farm lying partly in Fremont County, Iowa, and partly in Atchison County, Missouri. This mortgage was subject to a first mortgage of $55,000, covering the farm of 300 acres. This mortgage is identified in this record as Exhibit 7. On the date of the execution of these notes, April 25, 1923, Catherine Wing executed

1290

a release of the mortgage Exhibit 7. Such release is identified in this record as Exhibit 6. She failed, however, to acknowledge the same. In argument here, the defendant utilizes this circumstance in support of the following hypothesis, which we quote from his brief:

"The court will, by comparison of Exhibit 6 and Exhibits 2 and 3, see that Exhibits 6, 2, and 3 all bore the same date, to wit: April 25th, 1923. Would it not seem, from all of the evidence in the record in this case, that some negotiations had been entered into and discussed by Levi Wing and his mother by which a release of the mortgage, Exhibit 7, was to be made by Catherine Wing, in order to clear the record of the indebtedness created by her mortgage, Exhibit 7; that, in place of the indebtedness then held by Catherine Wing against the appellant, Levi Wing, which was being released, Levi Wing was executing to his mother an unsecured note of $14,000, to take the place of the secured note, and a note of $1,206.09, to take the place of the accrued interest then due upon the secured note; that, for some reason unknown in this record, Catherine Wing never acknowledged the release of the mortgage upon her son's farm and delivered the same to him, and for a like reason, the son, after making the notes in suit, Exhibits 2 and 3, never delivered the same to her?

"We submit, in conclusion, that the record in this matter shows an uncompleted transaction existed between Catherine Wing and the appellant, Levi Wing, and that, by reason of the failure of these parties to close their transaction, the notes Exhibits 2 and 3 were never delivered."

We quote the foregoing because it puts the whole defense into a nutshell. Following the foregoing hypothesis further into the record, we find that a formal and correct release of the mortgage was filed later, on May 10, 1924, both in Fremont County, Iowa, and in Atchison County, Missouri, and that cancellation of the note and mortgage was stamped upon the instruments. If we assume, therefore, that the notes were executed tentatively, to be used only in the satisfaction of the existing mortgage, as the consideration therefor, such consideration was fully received by the formal discharge of the mortgage on May 10, 1924. The circumstances are very persuasive that

Exhibits 2 and 3 were intended to become evidence of the same indebtedness as was represented by the mortgage, Exhibit 7. For the purpose of this case, it is immaterial whether the actual delivery occurred on the date of the notes or at some future date, such as May 10, 1924. Every circumstance stated by the defendant in his evidence could be true, without presenting any inconsistency with the delivery of the note at some date on or after April 25, 1923. The anchorage in this record is the undisputed fact that, on the date of these notes, the defendant was indebted to his mother for just these amounts. On and prior to April 25, 1923, this indebtedness was represented by the note, Exhibit 4, and by the mortgage, Exhibit 7, dated January 4, 1922, both of which were later canceled. In the consideration of the circumstantial evidence, no hypothesis can be acceptable which is contradictory to, or inconsistent with, this undisputed fact. *Peck v. Foggy*, 199 Iowa 922. The theory advanced by the defendant wholly ignores this undisputed fact, and treats such indebtedness and the later discharge thereof as though nonexistent. The adoption of such a theory would amount to a discharge in bankruptcy. Upon the circumstances appearing in the record, a natural inference arises that the notes in suit were the consideration for the discharge of the mortgage. Such an inference could be met by a showing that the discharge was obtained by payment or by other consideration. The defendant refrains from any explanatory circumstance attending the discharge of such mortgage. At this point, he interposes against himself Section 11257, though he was quite fearless of that statute in his evidence of non-delivery. If the defendant actually paid the mortgage, Exhibit 7, it is conceivable that circumstances would have been available to him, tending to show that fact. It would have been permissible for him to show at least that he had available funds, either in a bank or in some other depository, or that he had other form of available assets which were usable for such a purpose. If the mortgage debt was paid, rather than renewed, it must have been done through some means and by some agency. If he paid it by check, the check would have been persuasive evidence. If he paid it in currency, he must have received the currency from some source. Proof of that fact would have been persuasive. In making the foregoing suggestions, we do not overlook that the defendant did not, either by pleading or evidence, claim payment

of such indebtedness, and that his defense rests upon a denial of delivery. The weight of the circumstance of the existing indebtedness is not thereby lessened. It is a dominant fact in the record, and no conclusion inconsistent therewith can properly be reached. When the case is taken as a whole, and treated as one resting upon circumstantial evidence, such evidence greatly preponderates in support of the delivery of the notes.

II. There is one other feature of the record upon which defendant places much reliance in argument. Mrs. Lusby was appointed administratrix on June 1, 1926. During the month of June, she and her husband and her attorney examined the two boxes of the intestate for the discovery of papers. They discovered therein, in an envelope, Exhibits 1, 4, 5, 6, and 7, and none other. They did not at that time discover Exhibits 2 and 3. In a further search, had in January, 1927, these exhibits were discovered, within another envelope. The appellant asks that this testimony be discredited, and that it be inferred that these exhibits were not found in the box of the intestate. The appellant is aided in this contention by the testimony of Mrs. Lusby, to the effect that the discovery was made about two weeks after the first examination. That Mrs. Lusby was mistaken in the time thus fixed by her is very evident, upon the record. That her testimony in that regard was inadvertent, rather than intentionally false, is also clear enough. She could have no possible motive in fixing the date other than as it was. The fact that the notes were not found in the first search is by no means incredible. The fact that there was a failure to find these in the first search has no particular importance to the result of the trial. If the identity of the papers were in dispute, a different question might be presented. From a careful reading of the record, we are firmly convinced of the correctness of the finding of the district court upon the facts. The remedy pursued and the equitable relief sought are not challenged on the appeal. That the  indebtedness of an insolvent heir to a decedent may be charged against his interest in the estate is a proposition well settled in this state and in many others. *Senneff v. Brackey,* 165 Iowa 525; *Woods v. Knotts,* 196 Iowa 544; *In re Estate of Mikkelsen,* 202 Iowa 842.

The decree of the district court is, accordingly,—*Affirmed.*

ALBERT, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.