In re Estate of Frederick Stratman.

Clara Tammen, Appellant, v. Lucile Elman, Executrix, Appellee.

No. 45686.

January 13, 1942.

Rehearing Denied April 10, 1942.

Thompson & Weible, for appellant.

Harrington & Lowe and Mitchell & Loth, for appellee.

GARFIELD, J.—Claimant, Clara Tammen, is a widow who, at

the time of the trial, was nearly 81 years old. Decedent, Frederick Stratman, was her brother. The claim alleged that claimant's father died testate in 1895, leaving certain real estate in Hardin county and a town property in Buffalo Center, Iowa, which were devised in equal shares to his five sons and daughters, subject to the life estate of their mother, who died in 1911; that the real estate in Hardin county was sold to one Hoskins for $25,000 on May 17, 1912, and the Buffalo Center property was conveyed to claimant for $900 on September 12, 1913; that decedent transacted for claimant all of the business in connection with the aforesaid sales and received her share of the consideration from the sale of her interest in the Hardin county land; that the balance due claimant, which decedent agreed to pay her and which claimant never received, is $4,000 with interest from May 17, 1913.

An amendment to the claim alleged that on January 19, 1938, decedent admitted in writing the obligation upon which claim was made. A copy of the admission, attached to the amendment, consists of an assessment roll for 1938 signed and sworn to by decedent, containing the following:

"From the total of the above Moneys and Credits, I claim a deduction of the amount of my bona fide indebtedness as follows:

"Value of all notes and mortgages and accounts as listed below:

"Name (owing to), Clara Tammen, P. O. Address, Offset
Amount
"B. C., Iowa $4,000"

The answer to the claim contained a denial, a plea of the statute of limitations, and certain other defenses regarding which the evidence is silent.

At the conclusion of claimant's evidence, the executrix moved for a directed verdict because there was no sufficient evidence of the claim and because it was barred by the statute of limitations. The motion was sustained and judgment entered thereon. Claimant has appealed and asks a reversal, not only because of the alleged error in directing the verdict, but also because of the exclusion of certain evidence.

■ I. Appellant was asked: "Other than the house in Buffalo Center, did you ever receive your share of the money coming from the land in Hardin county?" Appellee objected to the question as calling for a conclusion and because the witness was incompetent under the dead man statute, section 11257, Code, 1939. The sustaining of the objection constitutes the first error assigned by appellant. We think appellant was incompetent under the statute to answer the question in that form.

The claim alleged, in substance, that decedent received appellant's share of the money coming from the Hardin county land and never paid the same to appellant. While appellant could have testified to what if any money she received from the purchaser, she was an incompetent witness to deny the receipt of her share from decedent. Lusby v. Wing, 207 Iowa 1287, 1289, 224 N. W. 554. We have frequently recognized that a witness testifies to a personal transaction no less when he denies it that when he affirms it. In re Will of Winslow, 146 Iowa 67, 71, 124 N. W. 895, Ann. Cas. 1912B, 663; In re Will of Renne, 194 Iowa 938, 949, 189 N. W. 776. Under the circumstances here, appellant's denial that she ever received her share would be a denial that decedent paid her, which the statute forbids.

■ II. Following the above ruling, appellant was permitted to say that she knew who received her share of the money coming from the Hardin county land. To the next question, "Who did receive your share?", the court sustained appellee's objection that it was a conclusion, no proper foundation laid, and that a personal transaction was called for. If permitted, the answer would have been, "Fred Stratman." Appellant assigns error. She argues that it does not appear from the question or otherwise that the testimony related to a personal transaction with decedent. This may be conceded. Nevertheless, we think the ruling was not error. Even though appellant had stated that she knew who received her share, there was no showing of the source or extent of her knowledge. The testimony partook at least somewhat of a conclusion or, at any rate, of what has been referred to as a composite or collective fact. The inquiry was not limited to what the witness saw or heard. Under such circumstances, the court had discretion either to

require that the witness's source of knowledge be more fully shown before allowing her testimony, or to permit the testimony and leave the basis of her knowledge to be brought out on cross-examination. 20 Am. Jur. 643, section 771. The court chose the former method. No abuse of that discretion appears.

III. Thomas Tammen, appellant's son, testified as a witness for his mother: "I knew of my grandfather's estate in Hardin county and that there was land there. I remember the sale of the land. I know who handled the business in connection with that sale." To the following question, "Who did handle it?" the witness answered, "Fred Stratman." On appellee's motion, this answer was stricken as a conclusion and without proper foundation.

The propriety of this ruling is more doubtful. This witness was not incompetent under the dead man statute. The court might well have permitted the answer to stand. It probably would be difficult to detail the primary facts leading to the ultimate fact (somewhat of a conclusion, to be sure) that decedent "handled the business." See 22 C. J. 531, section 613. Somewhat similar questions have been held proper in Gault v. Sickles, 85 Iowa 266, 270, 52 N. W. 206; Coldren v. LeGore, 118 Iowa 212, 215, 91 N. W. 1066; Heusinkveld v. Ins. Co., 106 Iowa 229, 233, 235, 76 N. W. 696; Moyers v. Fogarty, 140 Iowa 701, 712, 119 N. W. 159. However, the question was of the kind discussed in Division II hereof and for the reasons there stated, we do not hold this ruling constitutes reversible error.

IV. Appellant offered in evidence her own assessment rolls for the years 1929 to 1933, which showed moneys and credits due her of $4,000. To this offer, the court sustained appellee's objection on the ground that the rolls were self-serving statements. Appellant argues that the statements really constituted admissions against interest because they subjected her to liability for taxes. No authority is cited in support of this assignment of error. We are inclined to hold the ruling was proper. The evidence was hearsay.

V. It is next urged that there was sufficient evidence to carry the case to the jury. This requires a statement of the evidence. Appellant's father died in 1895, leaving a will which was

duly probated, devising the Hardin county land and the Buffalo Center property to his five sons and daughters in equal shares, subject to the life estate of his wife. The widow died in 1911. On April 5, 1913, the five heirs deeded the Hardin county land to one Hoskins for a consideration of $25,000, $6,000 of which was paid in cash. The son, Claus, received full payment of $5,000 for his share out of the cash payment of $6,000. The remainder of the purchase price was evidenced by a note and mortgage for $19,000 payable to appellant, decedent, and the two remaining heirs, in four equal shares. This mortgage was released about March 1, 1918, and a new mortgage for the same amount was executed to the four heirs. The 1918 mortgage was in turn released about March 1, 1921, and new mortgages totaling $19,000 were executed to the four owners. These latest mortgages were released on February 6, 1924. The Buffalo Center property was deeded to appellant for $900 by the other four heirs on September 12, 1913.

C. W. Gadd, a banker then living at Buffalo Center, who was very well acquainted with decedent and knew the whole family, testified that when the Hardin county land was sold he was requested by decedent, Fred Stratman, to go to Hardin county and close the transaction; that he did as requested and came back and reported to Fred what had taken place. Gadd testified: "So far as I know, Clara Tammen had nothing to do with that sale. Clara had no business experience whatsoever that I know of. John Tammen (claimant's husband) was employed around there as a laborer. Fred Stratman rented his own farms and acquired considerable property through his own business acumen."

One Lohrbach, a nephew of both decedent and appellant, testified that about 1918 he heard decedent talk to the witness's father with reference to a mortgage on some land. "Fred made the remark that he had some of Clara's money. He didn't say where the money came from or how much he had."

Thomas Tammen, a son of appellant, in 1932 and 1933 was employed by a Joint Stock Land Bank in Chicago in the sale of farms. This witness described in detail the circumstances of a conversation with decedent in 1932 or 1933 in which decedent

said that he was threatened with foreclosure on one of his farms by the mortgagee, Lincoln Joint Stock Land Bank; that he, decedent, asked the witness if the Lincoln bank would be apt to "jump on" another unincumbered farm which decedent owned. The witness then testified: "He [decedent] said, 'If they do, I will give your mother [appellant] a mortgage for $4,000; *you know I still owe her that $4,000 she got out of the Hardin county farm.*' Then I said, 'Well, you had better do that right away if you intend to do it. It is possible they might try to show that you are just covering up.' Fred then said, 'Well, Joe Lowe said it would be all right to wait until they started foreclosure because it is easy to prove I owe your mother the $4,000.' "

There were received in evidence assessment rolls signed and sworn to by decedent for the years 1934 to 1938, inclusive, each of which, except the one for 1935, claimed a deduction from the total of decedent's moneys and credits, "of the amount of my bona fide indebtedness as follows: Value of all notes and mortgages and accounts as listed below:—Name (Owing to) Clara Tammen, Offset amount $4,000." The assessment roll for 1935, for some unexplained reason, gave the amount due Mrs. Tammen as $3,000. The assessment rolls of appellant for the years 1934 to 1938, inclusive, were received in evidence. They each listed a single item of moneys and credits due her of $4,000.

There were also received in evidence 15 checks signed by decedent payable to appellant, bearing her indorsement, dated each year from 1915 to 1926, inclusive. Twelve of the checks are dated approximately March 1st of each year. The amounts of these twelve checks closely correspond to the amount of interest computed at either 5% or 6% on either $4,750 (one fourth of $19,000, the amount of the purchase money mortgage) or $4,000. For example, the check dated March 19, 1918, was for $237.50, 5% of $4,750. For the year previous, the Hoskins mortgage drew 5%. Check dated March 7, 1919, is for $291. Checks dated March 1, 1920, and March 3, 1921, are each for $285, 6% of $4,750. From March 1, 1918, until paid off, about March 1, 1924, the purchase money mortgages drew 6%. The checks for each of the five years from 1922 to 1926 were for $240, 6% of

$4,000. It is to be noticed that decedent continued to pay appellant $240 a year for two years after the purchase money mortgages were paid off. Counsel account for the reduction of appellant's share of the proceeds from the Hardin county land to $4,000 by her acquisition of the Buffalo Center property at $900.

Surely from the foregoing a jury could find that decedent was owing appellant $4,000 at the time of his death. Appellee argues, however, that the evidence is insufficient to show that the debt is the one for which claim is made. We are unable to agree with appellee's contention and hold that the evidence was sufficient to warrant submission to the jury.

It is, of course, well settled that the technical rules of pleading do not apply to claims in probate. Shoberg v. Rock, 230 Iowa 832, 837, 298 N. W. 834, 837. We have frequently held that the same conformity of proof to the allegations of the claim is not required as in ordinary actions. In re Newson, 206 Iowa 514, 523, 524, 219 N. W. 305; Newell v. Estate of Newell, 198 Iowa 710, 712, 200 N. W. 238; Craig v. Craig Estate, 167 Iowa 340, 349, 149 N. W. 454. The rule that a pleading must proceed upon a single, definite theory and the trial and recovery had upon that theory, has little or no application to claims in probate, especially if it would lead to injustice. Wilson v. Else, 204 Iowa 857, 862, 216 N. W. 33, 37; Chariton Bank v. Whicher, 163 Iowa 571, 579, 145 N. W. 299.

Appellant was required to prove her claim only by a preponderance of the evidence and not, as in a suit in equity to establish an oral contract of a decedent, by clear, satisfactory and convincing evidence. In re Dolmage, 204 Iowa 231, 213 N. W. 380, and cases cited; In re Newson, 206 Iowa 514, 524, 219 N. W. 305. Appellant is entitled to the most favorable construction of which the evidence is fairly susceptible.

Viewing this case in the light of the above rules, the prayer of the claim for interest from 1913 and the allegation that decedent agreed to repay appellant are not, as appellee argues, sufficient justification for the directed verdict. A pleader frequently asks for more than he is entitled to. We may observe incidentally that appellant precluded herself from recovering

interest that accrued prior to March 1, 1926, by contending upon the trial that decedent paid interest until that date. It was not necessary for appellant to prove the date when this obligation arose nor an express agreement to repay. If decedent received $4,000 from the proceeds of his sister's inheritance, he was in good conscience bound to account to her for it, even in the absence of an agreement on his part. Even where technical rules of pleading apply, a party is required to prove only such allegations as will entitle him to recover. Lee v. Coon Rapids Bank, 166 Iowa 242, 248, 144 N. W. 630; Chandler M. & M. Co. v. Greenwood Groc. Co., 200 Iowa 919, 921, 205 N. W. 787; Williams v. Guy, 209 Iowa 711, 713, 714, 228 N. W. 646.

Appellant, under the liberal rules of pleading in probate, fairly stated a claim for money had and received. It is elementary that to establish such a claim, it is essential merely to prove that a defendant has received money which in equity and good conscience belongs to plaintiff. It is not necessary to prove a promise to pay. Although this form of action is ordinarily one at law, it is governed by equitable principles and is favored by courts. 4 Am. Jur. 509, section 20; 41 C. J. 28, 29, section 2; McClean v. Stansberry, 151 Iowa 312, 131 N. W. 15, 35 L. R. A., N. S., 481; Sheboygan County v. City of Sheboygan, 209 Wis. 452, 245 N. W. 87; Seastrand v. D. A. Foley & Co., 144 Minn. 239, 175 N. W. 117, 119.

It appears here that appellant, the wife of a casual laborer in a small town, was entitled to $4,000, or a little over, out of the sale of the Hardin county land left by her father, in addition to the purchase price of the town property which she acquired. Neither the evidence nor arguments suggests any other source from which she could have gotten any such amount. There is substantial evidence that decedent at the time of his death owed appellant $4,000; that he paid her a sum about equal to interest on such a debt for at least eleven years; that decedent orally admitted in 1932 or 1933 that the $4,000 he was owing appellant was her share of the proceeds from the Hardin county land. There is no evidence that the $4,000 debt to appellant repeatedly admitted by decedent in the assessment rolls arose in any other manner than as claimed by appellant.

 VI. The motion to direct asserted not only the claimed insufficiency of the evidence, but also the bar of the statute of limitations. Section 11018, Code, 1939, provides:

"Causes of action founded on contract are revived by an admission in writing, signed by the party to be charged, that the debt is unpaid, or by a like new promise to pay the same."

Appellant contends that the assessment roll above set out signed by decedent on January 19, 1938, is such "an admission in writing." The contention is meritorious. It is well settled that the written admission need not specifically describe the debt sued on. It may be shown by extrinsic evidence that the admission refers to the debt in suit. Barton v. Boland, 224 Iowa 1215, 279 N. W. 87; McClure v. Smeltzer, 222 Iowa 732, 269 N. W. 888; Koht v. Dean, 220 Iowa 86, 261 N. W. 491. It is not necessary that the written acknowledgment of the debt be addressed to or delivered to the creditor. It is sufficient if it is signed and in any way promulgated as evidence. Leland v. Johnson, 227 Iowa 520, 531, 288 N. W. 595; Doran v. Doran, 145 Iowa 122, 123 N. W. 996, 25 L. R. A., N. S., 805.

 The assessment roll signed by decedent lists "my bona fide indebtedness" under the heading on the blank form designated "notes and mortgages and accounts," gives appellant's name, the amount and abbreviated "P. O. address" of appellant. The only other headings on the form are designated "Miscellaneous accounts" and "Other indebtedness." Appellee's principal argument on this branch of the case is that the claim, being neither note nor mortgage, is not an account; that an account is evidenced by a book record. While the term has such a technical, legal meaning, it has a much broader significance which is well recognized. In this broader, general sense, an account is equivalent to a "claim" or "demand" based upon a transaction creating a debtor-creditor relation. It does not include tort claims. It need not be evidenced by any written obligation or record. 1 C. J. S. 571-573; 1 Am. Jur. 265, section 2. It is unlikely that decedent or the assessor was skilled in the use of technical, legal terms. Either would be more apt to use the term "account" in its broader, general sense.

Appellee argues that this is not a cause "of action founded on contract," within the meaning of section 11018; that "if decedent took claimant's money, he converted it—a tort." With this we do not agree. Liability of the estate does not depend upon any conversion or other tortious conduct of decedent. It is well settled that an implied undertaking as well as an express contract may be revived by a written admission. 34 Am. Jur. 235, section 291; Blakeney v. Wyland, 115 Iowa 607, 612, 89 N. W. 16; Spilde v. Johnson, 132 Iowa 484, 486, 109 N. W. 1023, 8 L. R. A., N. S., 439, 119 Am. St. Rep. 578.

Other questions argued have been carefully considered, but we do not discuss them. Since this claim should have been submitted to the jury, the judgment is reversed.—Reversed.

BLISS, C. J., and SAGER, OLIVER, HALE, MILLER, and WENNERSTRUM, JJ., concur.