W. B. Peck, Appellant, v. George Foggy et al., Appellees.

**WITNESSES: Competency—Transactions With Deceased—Failure to Take Part in Conversation—Test of Credibility.** Testimony of material conversations with a deceased person, testified to by an interested, incompetent witness *because he took no part in the conversation*, must be put to every test of credibility available in the record; and after so doing, the court must be *convinced* of its *essential* credibility.

**FRAUDS, STATUTE OF: Real Property—Possession Under Oral Contract of Purchase (?) or Lease (?)** A showing that a party went into possession *under a written lease* renders inadmissible all his testimony of an oral contract of purchase.

Headnote 1: 27 C. J. p. 385; 40 Cyc. pp. 2313, 2328. Headnote 2: 27 C. J. pp. 192, 349.

*Appeal from Lee District Court.*—W. S. Hamilton, Judge.

March 21, 1925.

Suit in equity, to establish title to land under an alleged oral contract with the owner of the land. Such owner, Cora Miner, having died, the suit is brought against her heirs, and a decree to quiet the title is prayed. There was a decree for the defendants on their cross-bill, and the plaintiff appeals.—*Affirmed*.

*E. C. Weber* and *J. R. Frailey*, for appellant.

*E. H. Pollard* and *R. N. Johnson,* for appellees.

Evans, J.—The alleged contract was made on January 2, 1918, with Cora Miner, who was the owner of the so-called "home farm" of 103 acres, located mainly in the southeast quarter of Section 14 in a certain township. She also owned 80 acres, known in the record as the "pasture," which was located in the northwest corner of Section 10 and in the northeast corner of Section 9 in the same township, being distant from the home farm 2 miles or more. On January 1, 1918, the plaintiff came from his former home in Cass County to the vicinity of this land in Lee County, for the purpose of occupying Mrs. Miner's farm, pursuant to previous arrangement. Mrs. Miner was the aunt of the plaintiff. She was a widow, without children. The defendants are her collateral heirs, including the mother of the plaintiff. The plaintiff went upon the "home farm" upon his arrival on January 1st. The plaintiff introduced the evidence of his wife, who testified to a conversation between the plaintiff and Mrs. Miner on the evening of January 2, 1918, in which conversation she took no part. Such alleged conversation was as follows (omitting interrogatories):

"A. They talked the matter over, and my husband thought the agreement they was talking over was pretty high. Q. The rent? A. Yes, sir, for the year. He was to pay $643.75 a year. Q. Until her death? A. He was to pay the taxes. Int. 70. On all the land that she owned? A. Yes, sir. A. She said that she wanted to make him an offer now, and that he was to reserve her a room and an additional sleeping room while she was there, and he was to come to West Point after her whenever she wrote for him, and he was to keep up the old fences and build new fences, and she was to have her board when she was there at the house. He was to take care of the cemetery lot. A. He was to pay the taxes on all the land. Int. 85. What was said about the insurance? A. He was to see about that. Int. 86. And pay for it? Int. 87. What was she to do? A. We was to have the land after her death. Int. 88. Was anything else spoken about it there,—what she would do? Tell it just as it was, as you remember. A. She said she would will it to him. She said, 'You are to have the land; I will will it to you.'

She said that after her death he would be the owner of all her land. * * *"

He also introduced the evidence of Mrs. Polson, who testified to a recital of such agreement by Mrs. Miner, in the presence of the witness and of the plaintiff. This same conversation was testified to by the plaintiff himself, who qualified by showing that he took no part in that conversation. This alleged oral contract has considerable verbal corroboration from a considerable array of witnesses, who testify to conversations with Mrs. Miner. Much of this evidence is quite perfect in form, and is well calculated to make a case, if it could be literally accepted as satisfying and convincing to the mind of the court. The statute of frauds is avoided by evidence tending to show partial performance on the part of the plaintiff. The plaintiff farmed the home farm in the years 1918, 1919, and 1920. Mrs. Miner died in October of the latter year.

The evidence for plaintiff is wholly in parol, and consists largely of the recollection of witnesses of the substance of conversations had with the decedent. Evidence of this kind, as proof of title to real estate, is under the general ban of the statute of frauds. This ban may be lifted by a showing that the plaintiff went into possession of the real estate and erected improvements thereon, pursuant to and as partial performance of the oral contract.

Both the plaintiff and his wife were under disability as witnesses, under Section 4604, Code of 1897 (now Section 11257, Code of 1924). Under this section, neither of them could testify to personal transactions between the decedent and the witness. The ban of this statute is avoidable, in legal effect, as to conversations in which the witness took no part. The avoidance of this ban seems to have been reduced to a formula, which has become quite standardized, and which has become very familiar to the courts. It will be noted, therefore, that the evidence relied on by the plaintiff is of such nature that it cannot be contradicted by direct evidence. If met at all, it must be by the attendant circumstances and by legitimate inferences to be drawn therefrom.

1. WITNESSES: competency: transactions with deceased: failure to take part in conversation: test of credibility.

In such a case, the court is under special duty to scan and

to scrutinize closely, and to put such evidence to every test of credibility available to it, in the record. In order to award title to the plaintiff, the court must be able to say that the evidence is not simply sufficient to make a prima-facie case, but that it is sufficient, in the light of all the circumstances, to carry conviction to the mind of the court, of its essential credibility. Its credibility is not necessarily established by mere positiveness of the witness, nor by perfection of the legal form in which the words of the alleged conversation are reported.

Paradoxical as it may seem, the more nearly perfect the evidence in a legal sense, the less may be its credibility. That is to say, the more important the evidence, the greater the challenge to its credibility. It is sometimes observable, in this class of cases, that the occasional witness, by the very perfection of the form of his evidence, discloses his conscious knowledge of the legal necessities of the case. In appraising the value and weight of such evidence, only indirect tests are available. These may be, and often are, effective either to confirm or to destroy the evidence of words. In putting the evidence to such tests, the first quest of the judicial mind is for anchorage,—something in the record which can be "tied to" as a *verity;* some fact which is indisputable, or which has been well proved in the record.

The *verity* in the record before us is a written *lease.* This lease was duly signed by plaintiff and his wife and by Cora Miner, sometime between January 2 and March 1, 1918. It is a lease of the "home farm" of 103 acres for the period of one year, with a conditional option for an additional 9 years. It contains other significant conditions presently to be noted. We have first to say whether the lease is genuine. The signatures to it are admitted. With this admission the lease was introduced in evidence in the first instance without objection, and without any challenge to its verity. Later in the trial, the plaintiff, in effect, withdrew his admission, and testified that the lease had been altered since it was signed. It so happens that the lease was written in duplicate, and that both duplicates were signed by the three parties. They are both in evidence as Exhibits 5 and 9, respectively. They were both written upon

2. FRAUDS, STAT-
UTE OF: real
property: pos-
session under
oral contract
of purchase (?)
or lease (?)

the same blank form of lease. In Exhibit 9, the blank spaces were filled in mainly by the use of pen and ink, but partly by the use of a typewriter. In Exhibit 5, the blank spaces were all filled in by the use of a typewriter. Both exhibits are in identical terms, without any variation whatever. Neither of them gives any evidence on its face, of the alteration claimed by the plaintiff, unless it could be said that the typewritten portion of Exhibit 9 could have been added thereto, as an alteration, and that the change from the use of the pen to the use of the typewriter might lend some ground to the claim that it was inserted at a later time. This supposition, however, has no application to Exhibit 5. The typewriting upon this exhibit carries the appearance of having been done at the same time, with the same typewriter, and with the same ribbon. No variation of any kind is to be observed upon the face of the instrument.

This lease covered 103 acres at an annual rental of $643.75. Into the body of the lease was written the following:

"Party of the second part is to have the privilege of nine years, additional, under the same terms, providing his cultivation of the farm and his conduct has been satisfactory to party of the first part. Party of the second part has the right to buy said farm at any time during his tenancy at the price of $125 per acre. In case of the death of the party of the first part, party of the second part has the privilege of holding the farm for ten years if he wishes to do so."

The alleged alteration of this lease is the addition of the last sentence above quoted. For the time being, we ignore such provision of the lease, although fully convinced that the lease is genuine in its entirety.

The legal effect of this lease upon the plaintiff's case is twofold: (1) His possession of the real estate becomes at once referable to it; (2) the provisions contained in the lease amount to written admissions by the plaintiff which are inconsistent with and contradictory to the claim of the existing oral contract between plaintiff and Mrs. Miner.

Reverting to the first proposition, that the possession of the plaintiff is referable to the lease, the plaintiff's purported avoidance of the statute of frauds thus fails him. He pleaded such avoidance and assumed to prove part performance of the

oral contract, in that he had entered upon, and continued in possession of the property in performance of the obligations undertaken by him. The lease takes this ground from under him, and leaves him within the prohibition of the statute of frauds. The lease is enforcible even now by the administrator. Under the statute of frauds, oral evidence is not admissible to show plaintiff's right to be something other than appears in the writing. The performance which plaintiff's evidence tended to prove on his part, was all referable to his obligations under the lease. The alleged oral contract was that he was to pay the taxes. The evidence was that Mrs. Miner charged herself with the taxes, and that any payments made by the plaintiff were credited to him on the rent. The claim of part performance by plaintiff, in that he went into possession of the property pursuant to the oral contract, is, therefore, completely negatived by the lease; and plaintiff's oral evidence all becomes inadmissible, under the statute of frauds.

Upon a reference to the admissions contained in the provisions of the lease, it will be noted that an option was given this plaintiff to buy the property during his tenancy, at $125 per acre. This was a provision wholly for his benefit,—not for the lessor's. Why such a provision, if there was already an existing contract for a virtual donation of the land upon the death of the lessor? Moreover, it is well proved in the evidence that the plaintiff besought his mother to buy the land at that price. His mother so testified; likewise, his brothers and sister.

It will be noticed further that the option for a continuation of the lease for nine additional years was even made conditional upon satisfactory conduct on the part of Peck. This also was inconsistent with the claim of an existing oral contract. Needless to say that the last clause, which is claimed by plaintiff to have been an alteration, was likewise inconsistent with such claim of oral contract. On the claim of alteration, it is suggestive that the clause was one purporting to be made for the benefit of the plaintiff; and no conceivable motive is apparent why it should have been inserted in the contract against his wishes.

There is another circumstance in the case that challenges the good faith of the plaintiff. Both in his petition and in his

evidence, he has claimed title, not only to the 103-acre farm of which he was in possession, but to the 80 acres of "pasture" land in Sections 9 and 10, of which he was never in possession, either by lease or otherwise. The "pasture" was at all times rented to other tenants by Mrs. Miner. His own connection with it appears to have been that, on one or two occasions, he collected the rent for Mrs. Miner.

No useful purpose can be subserved by our pursuing further details of the evidence. Sufficient to say that, even if we should deem the oral evidence on behalf of plaintiff admissible, we are not convinced of its truth. On the contrary, the circumstances disclosed in the record, including the lease and its provisions, convince us that, whatever the conversation had between plaintiff and Mrs. Miner was, it was something less, and was understood to be something less, than a complete and irrevocable contract for a conveyance or devise of this land.

For this sufficient reason, the decree of the trial court is—*Affirmed.*

All the other justices concur.