Carl A. Carlson, Plaintiff; Pearl Carlson Muff, Executrix, et al., Appellants, v. Robert Carlson, Appellee.

No. 46317.

October 19, 1943.

1134

J. Henry Eik, of Sioux City, for appellants.

Stilwill, Brackney & Stilwill, of Sioux City, for appellee.

SMITH, J.— We are concerned here only with the question of the statute of frauds. Defendant claims title by virtue of an alleged oral contract, followed by possession of the premises and by payment of the agreed purchase price. He also in effect pleads title by adverse possession but no serious claim is made in that respect.

The original plaintiff was the father of defendant and of the substituted plaintiffs. He was eighty-five years old at the time of trial and was in the hospital when his deposition was taken. His death occurred three days after trial began. The evidence reveals a loose and informal manner of dealing between plaintiff and defendant, all too common between parent and child, and disastrous when disagreements arise.

Some twenty-five years previous to trial plaintiff had become the owner of Lots 11, 12, and 13, in Block 2, Hyde Park Addition to Sioux City. The title was not always carried in his name but no question is raised as to his actual ownership at the time of the alleged oral contract.

The property is situated at the southeast corner of the intersection of Court and Twenty-seventh Streets. The lots run east and west, fronting on Court Street, and each is approximately 43.3 feet wide and 123 feet deep. Lot 11 is the corner lot and Lots 12 and 13 lie, in that order, to the south. There are, and at all times pertinent to this case were, buildings at and near the corner, occupying a 52-foot frontage on Court Street and extending to a depth of 42 feet to the east. There is in controversy here only that part of the lots not covered by and pertaining to these buildings. The entire area was covered by a mortgage which had to be extended and renewed at times. There had been no division of the property for taxation purposes.

The property is described by defendant as "just a hole, except lot 11." Again he says: "My father built a drug store building on the property at 27th and back of the building there was just a hole." And again: Lot 11 was "filled up quite

completely to the alley. * * * Lot 12 was practically, all of it, a hole; and so was 13; 13 is not filled yet.'' This description of the premises is uncontradicted.

The testimony of defendant as to the oral contract with his father fixes it as having been made in the spring of 1924. They had been conducting a garage at Twenty-first and Court Streets for about a year. That business was sold about July 1, 1923. According to the testimony of defendant there was talk between plaintiff and defendant some sixty days later about building a filling and service station on these premises at Twenty-seventh and Court Streets. Defendant consented to establish and operate it if a permit could be secured. In the spring of 1924 the permit was obtained.

Defendant testified:

''I asked him what—or what condition he wanted me to go on there; I said, 'What have you got to have for the ground?' Well, he didn't know. Finally, in later statements he said five thousand; I told him that was too much for a hole, is the way I said it; but I finally consented to go ahead on that basis.''

Defendant produced a plat which he says was given him by his father during the negotiations and which shows the dimensions of the lots and of the buildings in the northwest part of the area. Later he testified further:

''Q. Well, what was finally said by both you and your father in reference to the lot? A. He said he wanted five thousand dollars. Q. What did you say? A. I said it was too much. Q. Go on. A. 'Father,' I said, 'all right, I will go ahead.' Q. What was said about how this five thousand dollars should be paid? * * * A. On the basis of fifty dollars a month after the building was completed and the business started.''

This direct testimony of an oral contract is denied generally by plaintiff, who testified (by deposition before trial) that he never entered into any contract or agreement to sell the lots or any part of them.

It is undisputed that thereafter a filling station was erected and defendant produces an overwhelming array of checks tending to show that he expended over $4,500 for its erection and

for filling and improving the premises. He testified also to other substantial payments on behalf of his father, consisting of hospital, doctors', and undertaking bills and produced checks covering same.

In his deposition plaintiff made some claim to have built the filling station but defendant's testimony, aided by the documentary evidence, indicates he must have been mistaken. So long as the father was able to be up and around he spent considerable time at the station but there is no serious claim that he performed more than casual service there. Defendant was in possession of and owned and operated the business.

It appears that after the alleged oral contract was made for payment at $50 per month, the amount of the monthly installment was increased to $65 in order to enable plaintiff to make similar payments on property he had purchased. Canceled checks are in evidence showing that these monthly payments were made by defendant to plaintiff from July 3, 1924, to May 4, 1932.

Some evidence was offered tending to show that plaintiff claimed defendant was in possession of the premises as tenant and that $50 of each of these monthly payments represented rent. The admissibility of that evidence is questionable. Plaintiff's direct testimony is that the $65 monthly payments were "on old account." But in 1940 or 1941 he started an ouster action against defendant in municipal court and in the petition in that case alleged defendant was in possession of the premises under an oral lease entered into during August 1924. Defendant answered, making the same claim he makes here. The pleadings in that action are in the record, over objection. They were offered upon cross-examination of defendant to show some relatively minor discrepancies in time of the alleged contract and in the description of the premises involved. They do not constitute competent evidence that defendant was in fact a tenant. At most they show plaintiff so claimed at that time.

There have also been offered by the substituted plaintiffs two pages of what appears to be a sort of book of account of plaintiff. The book itself seems to have served plaintiff as a cashbook and it also contains a few personal ledger accounts. On one of the offered pages the account of defendant is credited

with two items of "rent overpaid," one for $180 and the other for $105. In the cross-examination of defendant it was suggested by counsel for plaintiffs that this represented the difference between $50 and $65 per month, one item covering the difference for a year, and the other presumably for seven months. The book was not identified as a book of original entry and no formal verification of the entries was offered, nor any showing as to when they were made.

The matter of the payment of taxes was handled as informally as was the rest of the transaction. Defendant undoubtedly paid some taxes. The checks in evidence reveal five items amounting to $1,064.39. He testifies to some other payments. We are unable to say what the total taxes for the period amounted to, or what would have been a fair division of the total taxable value between the two parts of the premises. The evidence would not enable any accounting to be made in this respect, even if this were an accounting action, which it is not.

Defendant testifies that when he made the last $65 payment, presumably in May 1932, he and his father orally agreed that enough had been paid. There were no monthly installments paid thereafter.

I. The foregoing is a substantial summary of the record upon which we are to determine whether defendant has shown such payment of purchase money, and such taking and holding of possession with plaintiff's consent, as will take the transaction out of the statute of frauds under the provisions of section 11286 of the Code of Iowa, 1939. He is undoubtedly basing his claim of ownership upon an oral contract that would otherwise be within the ban of the statute, Code section 11285(3).

There is no conflict in the evidence as to the *facts* of possession and payment. Undoubtedly defendant has held possession since the summer of 1924 and has made payments aggregating more than $5,000 and has made improvements on the property amounting to almost as much more. Was he in possession as tenant, or owner? Were the payments rent, or purchase price? These are the questions that confront us.

It is only fair to remember that plaintiff's death in an early stage of the trial may account for some lack of evidence to

deny or rebut the affirmative evidence adduced by defendant. That, however, is a circumstance that cannot be avoided. We cannot on that account ignore the showing made by defendant. Nor can we supply what might conceivably have been testified to by the plaintiff had he lived. We can only hold defendant to the burden of proving his case by clear and satisfactory evidence, sufficient "to carry conviction * * * of its essential credibility." Peck v. Foggy, 199 Iowa 922, 925, 202 N. W. 754, 755. Where part performance is relied on it must be shown to have been referable solely to the alleged contract. In re Runnells Estate, 203 Iowa 144, 153, 212 N. W. 327, and cases cited.

We have read and reread the record with all the skepticism toward defendant's contention that the nature of the issue requires. The evidence is largely direct rather than circumstantial in character. We are unable to reconcile the payments made by defendant to plaintiff with any theory of tenancy. There is no evidence that he was a tenant. Plaintiff did not so testify. There is only his verified petition in the ouster case in municipal court and the obscure book entries which refer to "rent overpaid." This book account, even if we were to hold it admissible, does not purport to furnish any complete record of the monthly payments, either as rent items or as payments for any other purpose. In fact, the payments are not shown at all. It does not purport to show the "old deal" or "old account" which plaintiff mentions in his testimony. The only "old account" shown prior to 1924 is balanced by a $1,500 note given by and referred to in the testimony of defendant. The canceled note is in evidence.

██ II. Plaintiffs argue that part performance of an oral contract cannot be shown by additional oral testimony of defendant himself. The language of our opinion in Fairall v. Arnold, 226 Iowa 977, 988, 285 N. W. 664, 669, is pertinent. In speaking of the proof of facts constituting part performance we there said:

"This does not necessarily mean that the proof must always be some written evidence, but it must be either by writing, or by some tangible act or circumstance, clearly and definitely referable to the oral agreement, and pointing it out and con-

firming it. Such tangible acts, as applied to real estate trans-
fers, may be possession, possession and improvements, payment of
consideration by cash or check, payment of taxes, or other acts
commonly incident to ownership, or, as stated in Code section
11286, 'when there is any other circumstance which, by the law
heretofore in force, would have taken the case out of the statute
of frauds.' If these tangible acts are shown, and they are, in
and of themselves, referable to the verbal contract and consist-
ent therewith, then parol evidence becomes competent to show
the specific terms of the contract.''

We cannot agree with the argument that the checks offered
here, showing monthly payments of $65 over a period of seven
or eight years, are mere oral testimony because they, standing
alone, are not self-explanatory. The statute does not make oral
testimony incompetent to prove *possession, and payment of pur-
chase price*. Nor does it make the vendee himself incompetent
as a witness to explain the nature and purpose of the possession
and payments.

This court said, many years ago:

''The doctrine of part performance and payment, *assumes*
the admissibility of parol evidence, to explain and apply them
* * * .'' Collins v. Vandever, 1 (Clarke) Iowa 573, 576.

We do not find any authority to the contrary. We have
since said, in a case involving personal property:

''There can be no doubt with reference to the competency
of parol evidence to prove delivery of property for the purpose
of establishing a sale which under the statute of frauds would
be rendered valid and effectual by such delivery. Brown v.
Wade, 42 Iowa, 647; Remick v. Sandford, 120 Mass. 309; Brown,
Statute of Frauds, section 316-a et seq. Therefore, as bearing
on the question of delivery, the testimony of defendants was
admissible * * *.'' Farmers Sav. Bk. v. Newton, 154 Iowa 49,
52, 134 N. W. 436, 437.

III. In this case these monthly and other miscella-
neous payments, and those made for improvements and taxes,
are not consistent with any claim that defendant was a tenant.

1140

They *are* consistent with the claim of an oral contract of purchase. We are not compelled unquestioningly to accept defendant's testimony as to the purpose of these substantial payments that passed from defendant to his father. But neither are we compelled to reject it. If the testimony bears on its face the stamp of truth, if it brings to the mind conviction of its essential verity, we may accept it, even though it depends, in part, upon defendant's testimony.

The evidence both of possession and of payment meets the requirements of the statute and the exacting tests we have held applicable in cases of this kind. It carries "conviction of its essential credibility." We hold that the trial court correctly decided the case and the decision is—Affirmed.

All JUSTICES concur.