Clara B. SCULLEN, Executrix of the Estate of Frank M. Braunberger, Deceased, Appellant,

v.

Albert J. BRAUNBERGER, Appellee.

No. 15222.

United States Court of Appeals Eighth Circuit.

Aug. 5, 1955.

Rehearing Denied Sept. 14, 1955.

James G. McDowell, Jr., Des Moines, Iowa (J. R. McManus, Des Moines, Iowa, on the brief), for appellant.

J. C. Riley, Burlington, Iowa (J. C. Pryor and John Hale, Burlington, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought in the Federal court by Albert J. Braunberger of Montana against his sister, Clara B. Scullen of Iowa, as executrix of the estate of their deceased brother, Frank M. Braunberger, to obtain declaratory judgment that the plaintiff Albert was the owner of certain securities in which the brother Frank had invested his money (about $28,000) during his lifetime, and also for decree in conformity with the declaration. It was alleged in plaintiff's complaint that in making the investments the decedent intended to create and did create a joint tenancy in himself and in the plaintiff as to all of the securities except one as to which decedent intended to and did create a trust for the sole benefit of the plaintiff. It was further alleged that as to all of the assets in joint tenancy the plaintiff became the owner thereof by operation of law immediately upon the death of the decedent. By answer, and amendment to answer, the defendant admitted that the decedent brother had made the investments of his own money in the forms alleged, but asserted that the agreement between the brothers was that the plaintiff would take the property and after paying the expenses of the last illness and funeral of Frank, would distribute the net proceeds to two brothers, Herbert R. and Arthur U. Braunberger, and the sister Clara. That the plaintiff entered into the agreement in bad faith and deceived his brother. He procured the transfer of the property for the purpose of gaining title to it for himself although the decedent never consented that the personal property should belong to plaintiff for his own use and benefit. That the brother Frank kept the securities involved in this action in his safety deposit box in the First National Bank of Creston, Iowa, and shortly before his death he directed that the keys to the box and the contents thereof should be delivered to the sister Clara during his lifetime, and that the net proceeds should be distributed by her, one-half to herself and one-fourth to each of the brothers, Herbert R. and Arthur U. Braunberger. That he also made a will bequeathing the estate of which he died seized, without

describing any of the securities here involved, to the same persons in the same proportions. The sister Clara is the executrix under the will and has taken the personal property and had it in her possession at the commencement of the action for the purpose of distributing it as her brother Frank directed her to do in his lifetime, one-half to herself and one-quarter to each of the brothers, Herbert R. and Arthur U. Braunberger, and none to the plaintiff.

One of the items in controversy is $900 which was paid to the plaintiff by the Burlington Railroad, of which the deceased was an employee, as a death benefit which the decedent had caused to be made payable to plaintiff. Defendant sought to recover that item from the plaintiff by counter-claim, alleging that it was intended to be transferred to plaintiff to be distributed to the sister and two brothers and was not for the use of the plaintiff.

In his reply, plaintiff pleaded, in addition to denials, that it was immaterial that none of the securities involved had ever been delivered to him.[1]

The evidence offered by the plaintiff on the jury trial of the case consisted of the securities themselves which showed that they were made payable as alleged in the complaint and purported to create joint tenancy in the decedent Frank and the plaintiff as to all of the securities with the one exception where a trust for the plaintiff was prescribed.

R. Brown, a practicing lawyer of Creston, Iowa, 84 years of age at the time of the trial, gave testimony for defendant tending to show, i. e., that he was not employed in the case and had no interest in it. That he visited the decedent Frank Braunberger at the hospital as a friend during Frank's last illness. Frank was then a widower whose only child had died, so that his brothers and

sister Clara were his next of kin. That Frank said he had signed some papers giving his brother Albert (the plaintiff) some interest in his property. He didn't seem to know what he had signed but said he signed because Albert told him that if he did he could settle his estate without court costs or attorneys fees or proceedings in court. Frank said that he had undergone a major surgical operation some six months ago and was still weak and that since he had been ill his brother Albert had not written or in any way concerned himself and he had doubts as to whether or not his estate would be disposed of as he wanted it. He said that under the arrangement that he had with his brother Albert, his sister Clara and his two brothers, Herbert and Arthur, were to get the property. He said Clara's husband had been ill a long time, her health was more or less destroyed and that the finances of the sister and two brothers were seriously affected and his brother Albert was well to do and didn't need it. He said Albert had never paid anything on the securities and they had remained in his (Frank's) possession at the bank all the time. Frank wanted to know what the effect would be as to Albert claiming the property in his estate. Upon Brown's replying that he could not tell unless he could see the papers, Frank gave him the key to his safety deposit box at the bank to permit an examination. Brown called the brother Herbert Braunberger to act as a witness, obtained and opened the box with the key and examined and made a list of the securities (which included those here involved). He reported to Frank at the hospital that on the face of the securities Albert could take possession of and distribute Frank's estate as he saw fit, to which Frank replied he did not want to leave it that way. He wanted

1. In an affidavit presented to the court in the proceedings and included in the record here (not introduced on the jury trial), the plaintiff deposed that the brother "Frank M. Braunberger prior to his death had told me that he was placing various items of his property in his name and mine so that after I received the same subsequent to his death, I could manage and dispose of the proceeds in accordance with instructions given me at that time by Frank M. Braunberger,".

it to go as he had stated. Brown said he could fix it the way he wanted it to go. Pursuant to decedent's directions, Brown then drew the will which did not specify any of the securities here involved but left any estate of which Frank died seized to his sister Clara and two brothers, other than plaintiff. (This was the will that was duly executed and was probated.) Brown explained to Frank that in the matter of gifts, etc., possession was the controlling factor, and Frank said, "I want you to go to the bank now and take possession of everything in that box," and "whereby Albert couldn't go there and withdraw anything" or he said, "If you don't want to do that you turn the key over to Clara and let her take everything," "so I turned the key over to her that day." Frank died the next day.

After Frank's death the witness had an interview with the plaintiff in which plaintiff claimed that he was the owner of the securities involved. Mr. Brown told plaintiff what his brother Frank had told him in the hospital and asked plaintiff if the assignments had not been made to him for the purpose of making a distribution of Frank's estate as Frank wanted it, whereby he acted as sort of an agent or trustee. Albert said, "Yes, that is what the assignment is for, but I am not going to do it" "he said he regarded those [the securities] [2] having the assignments on them as his and he was going to do whatever he pleased with them and he wasn't going to give Clara and her two brothers anything out of them."

Mr. Brown's testimony was corroborated in the main by that of the interested brother Herbert, who was present with Mr. Brown in his interview with the decedent at the hospital and with the plaintiff after Frank's death. Herbert took no part in either of the interviews but heard what was said. The testimony of Brown and Herbert was not contradicted.

At the conclusion of all the evidence the plaintiff moved for a directed verdict in his favor on the ground that the evidence adduced by the defendant falls far short of being of the character to establish the alleged trust and fraud which, under the Iowa law the defendant had the burden to establish under the pleadings in that the evidence necessary as required by the law had to be "clear and convincing, and as the court in one Iowa case has said, almost beyond reasonable doubt". That the written instruments established under the law the plaintiff's right to the property and the construction of the written instruments belongs to the court and not to the jury and that plaintiff's claim being based on the written instruments, there is nothing for the jury to consider. A further ground was that if defendant had established a trust in plaintiff for the benefit of the sister and two brothers, the defendant would not be entitled to relief in the action short of breach of such trust and no such breach was shown.

In ruling on plaintiff's motion for directed verdict the court properly indicated that its duty was to apply the Iowa law to the situation disclosed by the evidence. The court observed that it "did not attempt to review the evidence in detail". It merely stated that "considering the entire testimony and subjecting it to the test of the law as declared by the Supreme Court of Iowa in such circumstances, the court is compelled to reach the conclusion that plaintiff's motion for directed verdict should be sustained in its entirety". The court also used the expression that it "sustained the motion in toto". Further remarks made by the court in sustaining plaintiff's motion confirm that the court held that the law applicable to the case as declared by the Supreme Court of Iowa required the defendant to establish her defense to the plaintiff's claim to the securities involved by evidence not sim-

---

2. Interpolated for clarity.

ply sufficient to make a prima facie case, but clear and convincing evidence.

The court read from and expressed its adherence to the opinion of the Iowa Supreme Court in Peck v. Foggy, 199 Iowa 922, 202 N.W. 754, 755, to the effect that in appraising the value and weight of such evidence (as was given by R. Brown and Herbert Braunberger for defendant) only indirect tests are available and that the first quest of the judicial mind is for anchorage—something in the record that can be "tied to" as a verity; some fact which is indisputable and the court observed that the "verities in the record before me are these different securities". On their face they tended to show ownership of the securities in joint tenancy with the right of survivorship. The court read, "In order to award title to plaintiff [contrary to the "verity"],[3] the court must be able to say that the evidence is not simply sufficient, to make a prima facie case, but that it is sufficient in the light of all the circumstances to carry conviction to the mind of the court of its essential credibility".

The court also stressed and read to much the same effect from In re Estate of Rich, 199 Iowa 902, 200 N.W. 713, and from Byers v. Byers, 242 Iowa 391, 46 N.W.2d 800.

The court also said, "the action of the court today would be the same if the case was tried to the court without a jury".

The court ruling, therefore, was to the effect that the burden was on defendant to overcome plaintiff's showing by evidence clear and convincing and that in the court's opinion she had failed to do so.[4]

It is contended here for reversal that the trial court erred in assuming to pass upon the weight of the testimony ad-
duced by defendant and in disposing of the case on the ground set forth in the plaintiff's motion. The appellant presents that under long settled Iowa law a chancellor in an equity action in that state should require that proof to establish such a claim as the defendant made here must be clear, satisfactory and conclusive. But in a law action such as this action was, the Iowa law is equally well settled that questions of fact must be determined by the jury by a preponderance of the evidence. That the judge presiding at the jury trial here was in error in declaring that "his action here today would be the same if this case was tried to the court without a jury". That if he had been sitting as a chancellor to render judgment on his own findings and declarations only clear, satisfactory and conclusive evidence from defendant would have justified judgment for defendant. But in this law action in which the judgment is based on the finding and verdict of the jury, the jury must determine the facts on the preponderance of the evidence.

■ Although this court accords great weight to the determinations made by the trial judges upon the law of the states where they sit, the court's function is to review errors, and examination of the Iowa decisions convinces that the law of that state has always distinguished between the degree of proof required in ordinary actions and in actions in equity "since the early history of the state". As stated by the Supreme Court of Iowa in In re Dolmage's Estate, 204 Iowa 237, 213 N.W. 380:

"From an early day we have recognized the distinction between the degree of proof required in ordinary actions and in actions in equity",

and quoting from an early Iowa case:

" 'The rule by which a chancellor governs his own action in cases in

3. Interpolated for clarity.

4. None of the cases so relied on by the trial court has been cited here to support the judgment. Peck v. Foggy and Byers v. Byers were in equity and in Re Dolmage's Estate, 204 Iowa 231, 237, 213 N.W. 380, 383, the court said, "The only case that is called to our attention that appears even to be out of harmony with the general rule is In re Estate of Rich". In fact it is not "out of harmony".

which it is sought by parol evidence to convert a deed absolute on its face into a mortgage is that the "proof should be clear, satisfactory and conclusive". * * * It is, however, the established law of this state that questions of fact submitted to a jury in civil cases are to be determined by a preponderance of evidence.'"

In Carlson v. Bankers Trust Co., 242 Iowa 1207, 50 N.W.2d 1, 6, the court said:

> "Defendant is mistaken in asserting the proof must be clear, satisfactory and convincing. That requirement prevails in an action in equity * * * [citing Iowa cases]. In such a probate action as this, tried as an ordinary action at law, only a preponderance of evidence is required". Citing Iowa cases.

In Re Wulf's Estate, 242 Iowa 1012, 48 N.W.2d 890, 892, 33 A.L.R.2d 698, the court said:

> "In an early case (1882) this court pointed out that the rule by which in certain cases a chancellor governs his own action by requiring the proof to be clear and satisfactory does not apply in law actions". Citing numerous cases.

In Roth v. Headlee, 238 Iowa 1340, 29 N.W.2d 923, 924, the court said:

> "Defendants are mistaken in asserting the proof must be clear, satisfactory and convincing".

In Meredith v. Cockshoot, 235 Iowa 213, 16 N.W.2d 221, 225, the court said:

> "It should be kept in mind that the rules of law as to the sufficiency of proof in a case of this character are different in a law action than in an equitable proceeding". Citing cases.

The following Iowa cases are to the same effect: In re Dvorak's Estate, 213 Iowa 250, 236 N.W. 66, 67; In re Stratman's Estate, 231 Iowa 480, 1 N.W. 2d 636, 637, 642; In re Harding's Estate, 235 Iowa 337, 16 N.W.2d 585, 590; In re Karr's Estate, 235 Iowa 351, 16 N.W. 2d 634, 638; In re Parish's Estate, 236 Iowa 822, 20 N.W.2d 32, 36, and many more cases are cited in the texts. Scores of Iowa decisions reiterate the law as stated. It is clear beyond question that the trial court was in error in resting its decision on the grounds of plaintiff's motion for instructed verdict and in sustaining the motion.

As the jury verdict and judgment thereon resulted entirely from the court's mistake of the Iowa law reversal is ordered with direction to award new trial of the action.

Reversed and remanded for new trial.

On Petition for Rehearing and Addition to Opinion.

This case came on for hearing on the petition of the appellee for rehearing and on consideration thereof the petition is denied.

It is observed as an addition to the opinion heretofore filed that the judgment appealed from herein was rendered in a jury trial upon the verdict of the jury and we found the trial court was in error as to the degree of proof upon which the jury was required to determine the fact issues if such there were under Iowa law.

No other questions were decided and the remand leaves open on the new trial whether the case should be tried to the court without a jury, whether other parties should be joined, all questions as to the admissibility of evidence and any other matters not foreclosed by the opinion herein.